# UNITED STATES DISTRICT COURT
for the
District of South Dakota

| | |
|---|---|
| In the Matter of the Search of: | ) |
| IN THE MATTER OF THE SEARCH OF: | )    Case No.   5:20-mj-208 |
| Thumb Drive containing October 14, 2020, | ) |
| download of the encrypted compressed storage file | ) |
| containing the content of Facebook user: | ) |
| | ) |
| Damion Goings (Koinz) | ) |
| URL: https://www.facebook.com/damion.goings.3 | ) |
| | ) |
| Damion Goings | ) |
| URL: https://www.facebook.com/damion.goings.37 | ) |
| Which is in secure storage at the Rapid City Office | ) |
| of the Bureau of Alcohol, Tobacco, Firearms and | ) |
| Explosives. | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the District of _____ South Dakota _____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(1) and 924(a)(2) | Possession of a Firearm by a Prohibited Person |
| 18 U.S.C. §§ 924(c)(1)(A)(i) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime |
| 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) | Possession/Use with Intent to Distribute a Controlled Substance |

The application is based on these facts:

☒   Continued on the attached affidavit, which is incorporated by reference.
☐   Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested
  under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.
☐   Your applicant requests that no notice be given prior to the execution of the search warrant, i.e., "no knock", the basis of which is set forth in the attached affidavit.
☐   Your applicant requests authorization to serve the search warrant any time day or night pursuant to Fed. R. Crim. P. 41(e)(2)(A)(ii), the basis of which is set forth in the attached affidavit.

_____
*Applicant's signature*

_____ATF Special Agent Riley Cook_____
*Applicant's Name and Title*

Sworn to before me and:   ☐ signed in my presence.
                          ☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: ___10-19-2020  1:20 PM___

_____
*Judge's signature*

City and state:  __Rapid City, SD_____

_____Daneta Wollmann, U.S. Magistrate_____
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: Thumb Drive containing October 14, 2020, download of the encrypted compressed storage file containing the content of Facebook user:<br><br>Damion Goings (Koinz)<br>URL: https://www.facebook.com/damion.goings.3<br><br>Damion Goings<br>URL: https://www.facebook.com/damion.goings.37<br><br>Which is in secure storage at the Rapid City Office of the Bureau of Alcohol, Tobacco, Firearms and Explosives. | 5:20-mj-208<br><br><br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

State of South Dakota    )
                          ) ss
County of Pennington     )

I, Riley Cook, being duly sworn, state as follows:

1.     I am a Special Agent ("SA") with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), currently assigned to the Rapid City Satellite Office.  I have been employed by the ATF since July, 2014. Prior to ATF, I was employed as a Special Agent with the South Dakota Division of Criminal Investigation where I was assigned to investigate felony crimes including, but not limited to, narcotics trafficking and other types of violent crime. I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC").   I have also completed ATF Special Agent Basic

Training course.  While attending the academies at FLETC in Glynco, Georgia, I received specialized training concerning violations of the Gun Control Act within Title 18 of the United States Code and violations of the National Firearms Act within Title 26 of the United States Code.

2.     As a law enforcement officer, I have participated in numerous federal and state investigations involving the sale, possession, and trafficking of firearms and/or controlled substances.  I have also participated in various armed robbery cases.   Through my participation in these investigations, I have debriefed numerous defendants, informants, confidential sources, and witnesses who had personal knowledge regarding firearms and/or narcotics trafficking.  I have also participated in undercover operations, conducted physical and electronic surveillance, used informants, seized firearms and narcotics, executed search warrants, and made arrests.

3.    I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.   The information to be searched is described in the following paragraphs and in Attachments A and B.

4.     This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its

2

possession, pertaining to the subscriber or customer associated with the user IDs.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A) and 21 U.S.C. §§ 841(a)(1), are present in the following Facebook accounts: user names: Damion Goings (Koinz), URL: https://www.facebook.com/damion.goings.3 and Damion Goings, URL: https://www.facebook.com/damion.goings.37, and that evidence of those crimes will be found in the content of the encrypted compressed storage file provided to me on Facebook's law enforcement portal in response to a previous search warrant. I thereafter downloaded the file, but did not review the contents of the file, nor did I provide access to the file for anyone else to view. The downloaded filed is currently in the possession of the ATF. There is also probable cause to search the information described in Attachment A for evidence, contraband, or fruits of these crimes, as further described in Attachment B. This affidavit is made for the sole purpose of demonstrating probable cause for the issuance of this search warrant and does not set forth all of my knowledge of this investigation. This affidavit is sought to search the contents of the downloaded file for the information described in Attachment A for evidence, contraband, or fruits of these crimes, as further described in Attachment B. This affidavit is made for the sole purpose of demonstrating probable cause for the issuance of this search warrant and does not set forth all of my knowledge of this investigation.

3

6.     Encrypted compressed storage file as used herein, refers to a computer file whose contents of one or more files are compressed for storage or transmission, one example is a "zip file." The compressed storage file is used to large files or multiple files into one file for ease of transfer. The ESPs create the file then provide access to the file to law enforcement typically via the ESP's law enforcement portal. "Zip file," as used herein is a type of "Encrypted compressed storage file."

7.     From my training and experience, I am aware that when Electronic Service Providers, like Facebook, provide access to an encrypted compressed storage file, typically a zip file, on its law enforcement portal. The link is to a file that is limited to the content of the account authorized by the search warrant and no other accounts.

8.     It is my understanding that I must seek this additional warrant to review the responsive materials out of an abundance of caution to comply with the issue raised in the recent decision in *United States v. Nyah,* 928 F.3d 694 (8th Cir. 2019).

## PROBABLE CAUSE

9.     On June 10, 2020, law enforcement with the Meade County Sheriff's Office (MCSO) and Summerset Police Department (SPD) were dispatched to and address in Black Hawk, South Dakota, for the report of a burglary in progress in which the suspect was armed with a firearm. Upon arrival at the above identified residence, law enforcement observed a white 2008 Kia Optima bearing South Dakota license plate 2T5583 parked in the driveway of the residence. The driver

of the vehicle, identified as Myeshia Goings, was asked to exit the vehicle a detained by law enforcement.

10. While law enforcement was approaching the residence, a male, later identified as Damion GOINGS (AKA: Damion REDCLOUD), exited the side-door of the residence. GOINGS was detained as he exited the residence. Law enforcement entered the residence and made contact with Jordan Frost, who appeared to have been crying. FROST informed law enforcement that it was FROST that called 9-1-1 to report the incident. Frost informed law enforcement that she and GOINGS were in an intimate relationship and Frost recently became aware that GOINGS was engaged to another female. Frost ended the relationship with GOINGS and GOINGS was at the residence earlier in the day to collect his belongings. Frost indicated a verbal argument occurred, which turned into a physical assault. Frost stated that GOINGS grabbed her by the throat. Frost stated that after the physical assault, GOINGS departed the residence and left with Frost's cell phone and tablet.

11. Pursuant to the Frost informed law enforcement that a short time after GOINGS departed the residence, GOINGS returned and was knocking on the door. Frost stated that the door was locked and Frost refused to allow GOINGS enter the residence. Frost stated that GOINGS informed Frost that he "had a gun and would shoot the door open." Frost was aware that GOINGS possesses firearms; however, did not observe a firearm at this time. Frost stated that GOINGS ultimately gained entry into the residence at which time Frost retreated to a bedroom and locked the door. Frost stated that GOINGS was

5

knocking on the bedroom door when law enforcement arrived.  Frost stated that the white 2008 Kia Optima bearing South Dakota license plate 2T5583 parked at the residence belonged to Damion GOINGS.

12.   Pursuant to the investigation, a search of GOINGS' vehicle was conducted.  A Star (Interarms, Alex, VA), model Firestar, .45 caliber semi-automatic pistol (SN: 2056623) was found on the front passenger floor-board contained in a crown royal bag and a Spikes Tactical, model ST-15, 5.56 caliber semi-automatic rifle (SN: 94877) was located between the back-seat and trunk, covered by a towel. It was determined that the Spikes Tactical, model ST-15, 5.56 caliber semi-automatic rifle (SN: 94877) had been reported stolen from a Federal Firearms Licensee (FFL) burglary in Rapid City, South Dakota.  Also located in the vehicle was suspected methamphetamine, suspected marijuana, and drug paraphernalia.  It should be noted that the above described firearms were not manufactured in the State of South Dakota; therefore, travelled in and/or affected interstate commerce

13.   Rapid City Police Department (RCPD) Detective Andrew Kimbell and Pennington County Sheriff's Office (PCSO) Investigator Amanda Swanson, who were assisting with the investigation, conducted an interview with Myeshia Goings.  At that time, Myeshia indicated that she was not aware that the firearms were located in the vehicle.   In addition, Myeshia admitted to using methamphetamine and purchases methamphetamine from her brother, Damion GOINGS.

6

14.     Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent (SA) Riley Cook was contacted and advised of the incident.   SA Cook reviewed GOINGS' criminal history and determined that GOINGS has been convicted of Possession of a Controlled Substance (felony) in Pennington County, State of South Dakota. Therefore, GOINGS is prohibited from possessing and/or receiving firearms

15.     On June 10, 2020, ATF SA Riley Cook and Rapid City Police Department (RCPD) Detective Andrew Kimbell conducted a custodial interview with Damion GOINGS.  The interview was conducted following GOINGS' arrest on June 10, 2020 at the Summerset Police Department.   ATF SA Cook introduced himself to GOINGS and explained that SA Cook wished to speak with GOINGS regarding the firearms located in GOINGS' vehicle on this date by the Meade County Sheriff's Office and Summerset Police Department.  SA Cook then read GOINGS the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Advice of Rights and Waiver (ATF Form 3200.4). GOINGS stated that he understood his rights and agreed to waive his rights and continue speaking with SA Cook and Detective Kimbell.  GOINGS signed and dated the Advice of Rights and Waiver form.

16.     SA Cook asked GOINGS about the presence of illegal drugs in the vehicle.  GOINGS stated "as far as I know, no."  GOINGS stated that, other than the semi-automatic rifle that GOINGS observed law enforcement remove from the vehicle, GOINGS was not aware of any additional firearms in the vehicle. GOINGS acknowledged that the firearm was a serious concern due to the large

number of armed robberies and stolen firearms that are occurring in the area. GOINGS then referred to the rifle as "hot" because it is a "military assault rifle." GOINGS stated that he overhead law enforcement discussing that the rifle was stolen. GOINGS stated that his fingerprints and DNA would not be located on the rifle. SA Cook requested information as to the semi-automatic pistol that was located on the passenger-side floorboard of the vehicle. GOINGS again stated that he was not aware of the firearms in the vehicle. GOINGS stated that he recently got off parole with the State of South Dakota and may be going to prison for the incident that occurred on this date.

17.    GOINGS stated that he spent time in prison for illegal drugs. GOINGS stated that he uses methamphetamine and considers himself to be an addict. GOINGS stated that Myeshia Goings offered to give GOINGS a ride to get his phone, but could not provide details as to how Myeshia came into possession of the vehicle. SA Cook then stated that the firearms in the vehicle must belong to Myeshia since she had the vehicle. GOINGS responded, "I wouldn't say that." GOINGS then suggested the registered owner, or name on the vehicle's title, may be responsible for the firearms. GOINGS then acknowledged that items in the vehicle, such as prescribed medication, may belong to GOINGS. GOINGS stated that he has not observed Myeshia in possession of firearms

18.    Information had been received from GOINGS' mother that indicated that GOINGS has been in possession of the 2008 white Kia Optima bearing South Dakota license plate 2T5583 for approximately one (1) month. GOINGS stated that if he had owned the vehicle for one (1) month, GOINGS would have

8

transferred the title to the vehicle into GOINGS' name. GOINGS stated that he owns a black 2001 Grand Am. SA Cook again asked GOINGS about the 2008 white Kia Optima and if both his mother and sister were providing false information relating to GOINGS' possession of the vehicle. GOINGS then stated that he had been lying about the vehicle and he has been in the vehicle. GOINGS stated that he has been in possession of the vehicle for approximately one (1) month and paid $2,700.00 for the vehicle. GOINGS stated that he purchased the vehicle from the individual who is identified on the vehicle's registration. GOINGS stated that no one else typically drives the vehicle.

19.    GOINGS stated that the rifle found in the vehicle was from "some fucking white kid." GOINGS stated he purchased the firearm from the individual approximately four (4) or five (5) days ago. GOINGS stated that he met with the unknown white male at the Loaf'N'Jug on Haines Avenue and paid a "couple hundred bucks" for the rifle. GOINGS stated that he believed the unknown male's name may have been "Taylor." GOINGS stated that he had not met the individual in the past and contact was made with "Taylor" when GOINGS was leaving Loaf'N'Jug. GOINGS stated that the firearm was in a duffel bag initially and in two (2) separate pieces. GOINGS stated that the unknown individual was sweating and nervous when the deal occurred. The deal occurred in the back seat of GOINGS' vehicle. GOINGS suspected that the firearm was stolen. GOINGS confirmed that he purchased the firearm for $200.00. GOINGS stated that he did not shoot the rifle. GOINGS stated that he did have the rifle in Frost's residence in the past.

9

20.    SA Cook requested information as to the semi-automatic pistol located in the vehicle. GOINGS was not able to identify where he had obtained the pistol.    GOINGS stated he has been in possession of the firearm for approximately two (2) weeks.  GOINGS stated that he obtained the firearm because an individual from Pierre owed GOINGS money from prison. GOINGS identified the individual who owed GOINGS money as "Dustin." GOINGS was not aware if the pistol was stolen. GOINGS stated that he did not have the pistol in Frost's residence.  GOINGS stated that Frost has seen the pistol in GOINGS' vehicle. GOINGS stated that he keeps the pistol in the pocket of the driver's door of GOINGS' vehicle.

21.    GOINGS stated that the methamphetamine in the vehicle belonged to GOINGS.  GOINGS estimated that there were three (3) baggies in the vehicle containing methamphetamine. GOINGS stated that there was one (1) or two (2) 8-balls in the vehicle. GOINGS stated that he does not sell illegal drugs. GOINGS stated that the cash in the vehicle was earned by GOINGS from when he worked at the Grand Gateway Hotel. GOINGS acknowledged that with the cash, baggies, and scale in the vehicle, it appears that GOINGS may be selling methamphetamine.

22.    On. July 26, 2020, the Lawrence County Sheriff's Office (LCSO) received a report of a burglary in which multiple firearms were stolen.  The burglary occurred on July 19, 2020 at 12091 Reata Place, Whitewood, South Dakota, and the owner of the property, Michael Weyrich, informed law enforcement that Michael's son, Dexter WEYRICH was responsible for the theft

10

of the firearms. LCSO Investigator Dustin Schumacher reviewed WEYRICH's jail text messages. WEYRICH was incarcerated at the Lawrence County Jail. WEYRICH had exchanged text messages with his father, Michael, admitting to stealing firearms in order to obtain illegal drugs.

23. LCSO Investigator Schumacher conducted an interview with WEYRICH. At that time, WEYRICH admitted to entering his father's shop and gaining access to the safe in which the firearms were stored. WEYRICH informed Investigator Schumacher that WEYRICH had stolen firearms from the safe on three (3) separate occasions. WEYRICH advised that he had initially stolen one (1) firearm and believed it was a "M4" semi-automatic rifle. WEYRICH stated that he traded the firearm to Damion GOINGS in exchange for two (2) 8-balls of methamphetamine.

24. WEYRICH explained that on the second occasion of stealing firearms from his father's safe, WEYRICH stole two (2) firearms. Those firearms were traded to GOINGS in exchange for two (2) 8-balls of methamphetamine. WEYRICH advised that on the third and final occasion of stealing firearms from his father, WEYRICH obtained six (6) firearms from his father's safe. WEYRICH traded the firearms to GOINGS in exchange for one-half (1/2) ounce of methamphetamine. WEYRICH advised that he would meet with GOINGS on Old Country Road in Rapid City, South Dakota, in order to trade the firearms to GOINGS in exchange for methamphetamine. WEYRICH informed Investigator Schumacher that GOINGS was not always able provide the full "payment" of methamphetamine in exchange for the firearms and would require one (1) or two

11

(2) days in order to obtain the agreed upon methamphetamine. Occasionally, WEYRICH would receive a small quantity of marijuana, methamphetamine, or heroin from GOINGS while GOINGS was obtaining the agreed upon quantity of illegal drugs in exchange for the firearms. WEYRICH advised that he contacted GOINGS through Facebook Messenger.

25.   On August 3, 2020, the vehicle belonging to Damion GOINGS was observed by Pennington County Sheriff's Office (PCSO) Investigator Dan Rose in the parking lot near an apartment complex in Rapid City, South Dakota. The vehicle is identified as a white 2008 Kia Optima bearing South Dakota license plate number 2T5583. This information was provided to ATF SA Riley Cook. ATF SA Cook was aware that GOINGS had an active State of South Dakota arrest warrant issued out of Meade County South Dakota relating to the incident that occurred on June 10, 2020 regarding GOINGS. ATF SA Cook contacted Rapid City Police Department (RCPD) Sergeant Marcos Glass and PCSO Deputy Rusty Schmidt and advised the location of GOINGS' vehicle.

26.   On August 3, 2020, PCSO Investigator Rose and ATF SA Cook maintained surveillance of GOINGS' vehicle. RCPD Officer Glass, PCSO Deputy Schmidt, and PCSO Deputy Brandon Akley were in near proximity to GOINGS' vehicle in order to effectuate the arrest of GOINGS. It was determined that GOINGS had approached the vehicle and entered the front driver's seat. At that time, RCPD Sergeant Glass, driving a RCPD issued vehicle, approached GOINGS. At that time, GOINGS began to back out of the parking lot. Sergeant Glass initiated emergency lights and sirens. GOINGS then accelerated west through

the parking lot and over the curb and sidewalk entering North Maple Avenue, Rapid City, SOUTH DAKOTA,.  It should be noted that based on previous interaction with GOINGS, SA Cook was able to positively identify GOINGS as the driver and sole occupant of the vehicle.  RCPD Sergeant Glass initiated a vehicle pursuit with GOINGS; however, due to the multiple considerations, including the interest of public safety, the vehicle pursuit was terminated.  GOINGS was not apprehended on this date.

27.  On August 4, 2020, ATF SA Riley Cook searched for Damion Goings' profile on Facebook and identified two (2) separate accounts: Profile Name: Damion Goings (Koinz) (URL: https://www.facebook.com/damion.goings.3); and Profile        Name:        Damion        Goings        (URL: https://www.facebook.com/damion.goings.37.  SA Cook, based on previous contact with identified the profile pictures for each account to be GOINGS.  SA Cook submitted a preservation request regarding the above accounts to Facebook on this date.  SA Cook observed a photograph on GOINGS account that appears to show GOINGS in front of the white Kia Optima known to be associated with GOINGS.

28.  On August 12, 2020, law enforcement observed the vehicle belonging to Damion GOINGS parked near an apartment complex in Rapid City, South Dakota.  The vehicle is identified as a white 2008 Kia Optima bearing South Dakota license plate number 2T5583.  Law enforcement assisting with the investigation made contact with Corina Redfeather at an apartment within the complex  they observed the vehicle.  Redfeather and GOINGS have children

together.  Although Redfeather denied GOINGS' presence at the apartment, law enforcement located GOINGS' in the apartment.  GOINGS failed to comply with verbal commands issued by law enforcement.  GOINGS reached behind a bed mattress and instructed law enforcement to back up.  GOINGS indicated he had a firearm and made multiple statements to law enforcement regarding a firearm; including, but not limited to: "my Glock is right here," "this is going to be fun, you're going to have to shoot me."  GOINGS was also making noises as if he was loading a round in a pistol.  GOINGS then produced a large construction hammer from behind the headboard and threw the hammer towards law enforcement.  The hammer struck RCPD Officer Brandon Thompson, breaking his skin.  GOINGS then fled from the bedroom window and a foot pursuit ensued.

29.    GOINGS was pursued through the area of Surfwood Drive and Knollwood Drive.  It was later determined that GOINGS had attempted to forcefully enter a residence on Brentwood Drive, Rapid City, South Dakota; however, was unsuccessful.  Ultimately, law enforcement deployed an Electronic Control Weapon (Taser) and GOINGS was taken into custody.  Following GOINGS' arrest, two (2) baggies containing a white crystal substance believed to be methamphetamine and $309.00 cash was located on GOINGS' person.  The white crystal substance field tested positive for methamphetamine with a total weight (including packaging) of approximately 25.4 grams.  The suspected methamphetamine was submitted to the Rapid City Police Department laboratory for analysis.

30.   Your affiant believes there is probable cause to search the Target Accounts for evidence of a violation of 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A)(i), and 21 U.S.C. § 841(a)(1), based on the items located in GOINGS' possession on both June 10, 2020, and August 12, 2020, as well as information obtained from GOINGS' associates, which indicate that GOINGS may be involved in the illegal possession and use of firearms and the distribution of a controlled substance.

31.   On September 3, 2020, your affiant sought and obtained a search warrant for the Facebook accounts at issue.  Your affiant executed the court's search warrant on or about September 3, 2020, by serving it on Facebook via its law enforcement portal.  Facebook did not provide the responsive materials within 14 days of the issuance of this Court's search warrant.  On October 2, 2020, Facebook notified your affiant that the information relating to both of GOINGS' Facebook accounts was available for download at the Facebook law enforcement portal.  On October 14, 2020, the information relating to GOINGS' Facebook accounts were downloaded to a thumb-drive pending further review and this search warrant request.  The information was in the form of a zip file, a PDF file, and included a Certificate of Authenticity.  Your affiant's office printed the Certificate of Authenticity, then burned the zip file and PDF file to a thumb drive on that same date, October 14, 2020.

32.  Although the information was accessed, it was accessed solely for the purpose of confirming the file was accessible.  To date, no parties to this warrant have reviewed the material contained on the thumb drive.  Your affiant has not opened or analyzed the content and has not provided access to any other person

15

to review the content of the file.  The encrypted compressed storage file is being held securely at the FBI office in Rapid City, awaiting this search warrant.

33.    Your affiant, in consideration of the recent development in the Eighth Circuit, the *Nyah* decision of June 26, 2019, submits this request to search the thumb drive created on October 14, 2020, which contains the material provided by Facebook which was received by your affiant's office outside the 14-day window on the original search warrant dated September 3, 2020.

## INFORMATION ON FACEBOOK

34.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows individuals to specifically communicate with another person through a Facebook application called "Messenger."  In my training and experience, people who engage in online criminal activity often also utilize Facebook to meet victims and other offenders and to chat.  Even if Facebook was not utilized in the chat at issue, there is probable cause to believe there will be evidence regarding the online solicitation of minors within the target Facebook account.

35.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

36.    Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or

thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

37.    Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

38.    Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other

account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

39.   Facebook users can create profiles that include photographs, lists of personal interests, and other information.   Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.   In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.   A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

40.   Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.   It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.   When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.   For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

41.     Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.  These chat communications are stored in the chat history for the account.  Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

42.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

43.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

44.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.  Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity

log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but people who visit the user's Facebook page cannot viewed it.

45.   Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

46.   The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

47.   Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

48.   In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

49.   Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile:   profile contact information; News Feed

information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

50.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

51.    Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support

services, as well as records of any actions taken by the provider or user as a result of the communications.

52.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the user accessed or used the account. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining, the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-

22

location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

53.   Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED
## AND THINGS TO BE SEIZED

54.   I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-

authorized persons will review that information to locate the items described in Section II of Attachment B.

## REQUEST FOR SEALING

55.    I further request that the Court order that the matter be sealed until further order of the Court.   The matter is an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal the matter because premature disclosure may seriously jeopardize the ongoing investigation.

## LIMIT ON SCOPE OF SEARCH

56.    I submit that if during the search, agents find evidence of crimes not set forth in this affidavit, another agent or I will seek a separate warrant.

## CONCLUSION

57.    Based on the forgoing, I request that the Court issue the proposed search warrant.

58.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).

59.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Dated: 10-19-2020

_____
Special Agent Riley Cook
ATF

24

SUBSCRIBED and SWORN to

_____ in my presence

__X__ by reliable electronic means

This __19th__ day of October, 2020.

DANETA WOLLMANN
U.S. MAGISTRATE JUDGE

# ATTACHMENT A

## Property to Be Searched

This warrant applies to the thumb drive containing the October 14, 2020, download of the encrypted compressed storage file containing the content of the Facebook user accounts:

- Damion Goings (Koinz)
  URL: https://www.facebook.com/damion.goings.3

- Damion Goings
  URL: https://www.facebook.com/damion.goings.37;

which are in secure storage at the Rapid City Office of the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

**ATTACHMENT B**

**Particular Things to be Seized**

### I.     Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

All contact and personal identifying information, including for Facebook user IDs:

Damion Goings (Koinz)
URL: https://www.facebook.com/damion.goings.3

Damion Goings
URL: https://www.facebook.com/damion.goings.37

Including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(a)   All activity logs for the accounts and all other documents showing the user's posts and other Facebook activities;

(b)   All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(c)   All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall

2

postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(d)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(e)     All "check ins" and other location information;

(f)     All IP logs, including all records of the IP addresses that logged into the accounts;

(g)     All records of the accounts' usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(h)     All information about the Facebook pages that the accounts are or were a "fan" of;

(i)     All past and present lists of friends created by the accounts;

(j)     All records of Facebook searches performed by the accounts;

(k)     All information about the users' access and use of Facebook Marketplace;

(l)     The types of service utilized by the user;

(m)   The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(n)   All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the accounts;

(o)   All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook accounts, including contacts with support services and records of actions taken.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A)(i), and 21 U.S.C. § 841(a)(1), from June 2019, to present, including, for the user IDs identified on Attachment A.

UNITED STATES DISTRICT COURT
for the
District of South Dakota

| | | | |
|---|---|---|---|
| In the Matter of the Search of | | | |
| In the Matter of the Search of: | ) | | |
| IN THE MATTER OF THE SEARCH OF: Thumb | ) | Case No. | 5:20-mj-208 |
| Drive containing October 14, 2020, download of the | ) | | |
| encrypted compressed storage file containing the | ) | | |
| content of Facebook user: | ) | | |
| | ) | | |
| Damion Goings (Koinz) | ) | | |
| URL: https://www.facebook.com/damion.goings.3 | ) | | |
| | ) | | |
| Damion Goings | ) | | |
| URL: https://www.facebook.com/damion.goings.37 | ) | | |
| | ) | | |
| Which is in secure storage at the Rapid City Office | ) | | |
| of the Bureau of Alcohol, Tobacco, Firearms and | ) | | |
| Explosives. | ) | | |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of ___South Dakota___ *(identify the person or describe the property to be searched and give its location)*:

See **ATTACHMENT A**, attached hereto and incorporated by reference

I find that the affidavit, or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Evidence of a crime in violation of 18 U.S.C. § 2422(b), as described in **ATTACHMENT B**, attached hereto and incorporated by reference.

I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _November 2, 2020_ *(not to exceed 14 days)*

☒ in the daytime  6:00 a.m. to 10 p.m.       ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _Daneta Wollmann_ .

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30).*          ☐ until, the facts justifying, the later specific date of _____

☐ I find that good cause has been established to authorize the officer executing this warrant to not provide notice prior to the execution of the search warrant, i.e., "no knock".

Date and time issued:   10/19/2020   1:20 PM          _____
*Judge's signature*

City and state:          Rapid City, SD          ___Daneta Wollmann, U.S. Magistrate___
*Printed name and title*

cc: AUSA Patterson
clr

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| 5:20-mj-208 | | |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*